IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 8:05CR352 |
| vs. | ) | |
| | ) | REPORT AND |
| MICHAEL B. MUEGGENBERG, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's MOTION TO SUPPRESS (#13). An evidentiary hearing was held on December 9, 2005. The transcript (#18) was filed on December 14, 2005. Defendant requested, and was given, until December 16, 2005 to file a post-hearing brief, and the matter was deemed submitted on that date.[1]

Mueggenberg moves for the suppression of all evidence obtained during the stop and subsequent search of his vehicle. He alleges that the stop occurred without probable cause, in violation of his rights under the Fourth Amendment to the United States Constitution. Mueggenberg also moves for the suppression of statements he made to law enforcement, alleging the statements were not freely and voluntarily given and, therefore, were made in violation of his rights under the Fifth Amendment to the United States Constitution.

### FACTUAL BACKGROUND

Brian Jarrett testified that he is employed by the Sarpy County Sheriff's Department as a narcotics investigator on the Metro Drug Task Force. On August 30, 2005, he was

---

[1] No post-hearing brief was filed.

conducting surveillance at a residence at 5103 South 40th Avenue in Omaha, Nebraska, as a part of a law enforcement investigation involving Chris Dukich (6:3-14). About a week earlier, Jarrett had been informed by a confidential informant (CI) that Dukich was a methamphetamine supplier and that he used the South 40th Avenue residence for drug dealing. The CI identified Dukich's methamphetamine supplier as a white male, approximately 6'1", 200 lbs. (20:20-23), named Mike, who drove a red S-10 pickup with Iowa license plates. After receiving the information Jarrett ran the license plate number and found it was registered to Mike Mueggenberg (7:2-8) and that Mueggenberg had an active misdemeanor warrant in Douglas County (21:7-13). The warrant described Mueggenberg as a white male, approximately 6'1", and weighing 200 lbs. (20:20-23).

Jarrett testified that while surveilling the Dukich residence, he observed a red S-10 pickup bearing the same Iowa license plate pull into the driveway. He observed a white male, approximately 50 years of age, 6'1", 200 lbs., matching the description given by the CI (8:7-21) exit the S-10 and carry a black duffle bag into the residence. About 20-30 minutes later he observed the same man exit the residence, still carrying the black duffle bag, get into the red S-10 pickup (9:7-15), and drive away.

Jarrett testified that while the man was inside the residence, Jarrett telephoned the Omaha Police dispatch center and lined up a marked Omaha cruiser to initiate a traffic stop of the S-10 (9:16-25). Jarrett followed the S-10. At approximately 40th and "L" Streets he observed as the S-10 was pulled over by the Omaha police. Jarrett testified he ordered the

stop because the driver had an active misdemeanor warrant and his driving privileges were suspended or revoked in the State of Nebraska (11:6-22).

Jarrett testified that following the stop, the driver was identified as Michael Mueggenberg. Mueggenberg he was taken into custody on the outstanding misdemeanor warrant and for driving while his driving privileges were revoked (13:7-11). Jarrett then observed as members of the Omaha Police Department searched the S-10 pickup and seized a black duffle bag from the front passenger floorboard area. The bag was opened and found to contain methamphetamine and $4,400 in cash (14:2-15; 15:9-18).

Jarrett testified that following the search of the S-10 pickup he verbally Mirandized Mueggenberg as he and Mueggenberg sat in an Omaha police cruiser. Mueggenberg stated that he understood his rights and that he was willing to speak (16:1-7). While Jarrett did not smell alcohol on Mueggenberg's breath, he did note Mueggenberg had slurred speech, very red and bloodshot eyes, and just seemed "incoherent" like he was possibly under the influence of a narcotic. Jarrett questioned Mueggenberg for 10-15 minutes and developed a "strong feeling" Mueggenberg was not telling the truth, so he ended the interview (16:8-17:4).

## LEGAL ANALYSIS

### A. Legality of Traffic Stop

"For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest." *United States v. Jones*, 269 F.3d 919,

924 (8th Cir. 2001); *see United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001), *cert. denied*, 537 U.S. 850 (2002). As such, a traffic stop is governed by the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Jones*, 269 F.3d at 924. Under *Terry*, 392 U.S. at 21-22, a police officer may conduct an investigative stop if the officer has a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. *See also Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Reasonable suspicion requires a particularized and objective basis for suspecting the person stopped of criminal activity, but the level of suspicion required for a *Terry* stop is less demanding than that for probable cause. *United States v. Gonzalez*, 220 F.3d 922, 925 (8th Cir. 2000) (internal quotations and citations omitted). "A reasonable suspicion may be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality." *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1999). Even "[a] mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it." *United States v. Ornelas-Ledesma*, 16 F.3d 714, 718 (7th Cir. 1994), *judgment vacated on other grounds*, 517 U.S. 690 (1996) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184-86 (1990)); *accord United States v. Bailey*, 417 F.3d 873, 977 (8th Cir. 2005); *see also United States v. DeLeon-Reyna*, 930 F.2d 396, 399 (5th Cir. 1991) (en banc) (per curiam); and *United States v. Walraven*, 892 F.2d 972, 974-75 (10th Cir. 1989)).

In this case, Jarrett testified that he had Mueggenberg's pickup stopped because he believed Mueggenberg had an outstanding misdemeanor warrant and was driving with a suspended or revoked license. I find Jarrett's testimony to be credible and I find he had a reasonable basis for stopping Mueggenberg.

**B. Search of Vehicle**

In *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court held, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." The court observed that although it was settled that the police, to protect officer safety and preserve evidence, may search the person of an arrestee and the area within his immediate control, *see Chimel v. California*, 395 U.S. 752 (1969), and *United States v. Robinson*, 414 U.S. 218 (1973), no straightforward rule had emerged concerning searches incident to the arrest of occupants of an automobile. The court then identified the problem with the extant state of affairs: "When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority." *Belton*, 453 U.S. at 459-60.

To establish a workable rule, the court relied on the "generalization" that articles inside the passenger compartment of an automobile are generally, if not inevitably, within the area into which an arrestee might reach to grab a weapon or evidence. Thus, the court

held that the police, incident to an arrest, may search the passenger compartment of an automobile, and all containers within that compartment. *Id*. at 460.  *See also United States v. Wells*, 347 F.3d 280 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004); *United States v. Orozco-Castillo*, 404 F.3d 1101 (8th Cir. 2005).

The record shows that the search of Mueggenberg's S-10 pickup occurred after he was legally arrested on an outstanding misdemeanor warrant and for driving while his privilege to drive was revoked or suspended.  Because the black duffle bag was located in the passenger area of the pickup truck and clearly in an area where Mueggenberg could reach and grab the evidence, the bright-line rule of *Belton* applies even though Mueggenberg had been removed from the vehicle and was taken into custody.  *United States v. McCrady*, 774 F.2d 868, 871-72 (8th Cir. 1985).   The search of the vehicle was "contemporaneous to the arrest," *see United States v. Wells*, 347 F.3d at 287, and was permissible under *New York v. Belton*.

### C.  Mueggenberg's Mirandized Statements

In this case, *Miranda*[2] rights were read to Mueggenberg, and Mueggenberg does not challenge that fact.  Rather, he claims he did not voluntarily waive his *Miranda* rights because he was under the influence.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).  *Miranda* clearly applies in this case because Mueggenberg was interrogated while in police custody.  *See, e.g., United States v. Hatten,* 68 F.3d 257, 261 (8th Cir. 1995).  The question before the court is whether his statements were voluntary.

In order to find that a relinquishment of rights was voluntary, the court must find that it was a free and deliberate choice and not the result of intimidation, coercion or deception. Significantly, the court must also find the waiver was made with knowledge of the right being abandoned and the consequences of abandoning it. *United States v. Yunis*, 859 F.2d 953, 961 (D.C. Cir. 1988) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "To determine whether a waiver or a confession was voluntary, a court looks at the totality of the circumstances and must determine whether the individual's will was overborne." *United States v. Martin*, 28 F.3d 742, 745 (8th Cir. 1994); *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989). This involves a two-part analysis. The court "must examine both 'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'" *United States v. McClinton*, 982 F.2d 278, 282 (8th Cir. 1992). "Courts use an 'objective standard' for evaluating a defendant's waiver, and this takes into account the education, experience and conduct of the accused." *Yunis*, 859 F.2d at 965. The Eighth Circuit has noted similar factors. *See, e.g.*, *Martin*, 28 F.3d at 745; *McClinton*, 982 F.2d at 283. When the government opposes a motion to suppress a statement, it need only prove waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986); *see also, e.g., United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004) ("The government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence."); *United States v. Barahona*, 990 F.2d 412, 418 (8th Cir. 1993).

Turning to Mueggenberg's claim that his statements were not voluntary given, it should be noted that several circuits, including the Eighth Circuit, have found that a defendant can make a voluntary waiver and statement even while under the influence of drugs or alcohol. *See, e.g., United States v. Curtis*, 344 F.3d 1057, 1065-66 (10th Cir. 2003), *cert. denied*, 540 U.S. 1157 (2004); *United States v. Turner*, 157 F.3d 552, 555-56 (8th Cir. 1998); *United States v. Byrne*, 83 F.3d 984, 989 (8th Cir. 1996). A review of these cases, however, shows that while the defendant in each case was intoxicated or suffered a diminished capacity, the defendants were not found to be incapacitated but, based upon police testimony, were instead found to be otherwise coherent, composed and cooperative.

The circumstances presented in the above summarized cases are not the facts presented by Officer Jarrett regarding his questioning of Mueggenberg. On the contrary, Jarrett testified that he observed Mueggenberg's condition to include slurred speech, very bloodshot and watery eyes, and most importantly "incoherence," as if Mueggenberg was possibly under the influence of a narcotic. While Jarrett's testimony that Mueggenberg acted as though he might be under the influence of a narcotic is not in itself dispositive, based upon the case law of the Eighth Circuit and other circuits, it is fatal in the absence of any evidence that Mueggenberg was not actually incapacitated, or that he was otherwise coherent, composed and/or cooperative.

As the Court stated in *Moran v. Burbine*, 475 U.S. at 421, "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice ***and the***

-8-

*requisite level of comprehension* may a court properly conclude that the *Miranda* rights have been waived." (Emphasis added). Based on the record presented, I find that the government has not proven by a preponderance of the evidence that Mueggenberg's waiver of his *Miranda* rights was made with the requisite level of comprehension, that is, with knowledge of the rights being abandoned and the consequences of abandoning those rights.

## RECOMMENDATION

In summary, I find that the stop of Mueggenberg's S-10 pickup was based upon probable cause, and the search of the S-10 pickup was permissible as a search incident to Mueggenberg's lawful arrest. Although Mueggenberg was read his *Miranda* rights and waived those rights, the government has not proven by a preponderance of the evidence that the waiver was freely, voluntarily, and intelligently given.

For these reasons,

**IT IS RECOMMENDED** that defendant's Motion to Suppress (#13) be granted in part, and denied in part, as follows:

1. The motion should be denied as to the stop and search of Mueggenberg's vehicle.

2. The motion should be granted as to Mueggenberg's statements to Deputy Jarrett.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection

a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED January 12, 2006.**

                              **BY THE COURT:**

                              **s/ F.A. Gossett**
                              **United States Magistrate Judge**